UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| 340B HOLDINGS, LLC<br>d/b/a SUNRX<br><br>　　　　Plaintiff,<br><br>vs.<br><br>MATTHEW BOBO<br>in his individual capacity and<br>PERFORMANCE HEALTHCARE<br>SOLUTIONS, LLC<br><br>　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | No.　0:20-cv-00197 |

## COMPLAINT

Plaintiff 340B Holdings, LLC d/b/a SUNRx ("SUNRx") files this Complaint against Matthew Bobo, in his individual capacity ("Bobo") and Performance Healthcare Solutions, LLC ("Performance Health") (together, "Defendants"), and alleges as follows:

## INTRODUCTION

Defendant Matthew Bobo, a current employee of Performance Health, has flagrantly breached his contractual and fiduciary duties to his former employer, SUNRx. He has violated the non-compete provision of his Employment Agreement with SUNRx by going to work for one of SUNRx's direct competitors. He has violated the non-solicitation provision of his Employment Agreement by attempting to lure away SUNRx's partners and customers. He has violated the confidentiality provisions of his Employment Agreement by misappropriating SUNRx's trade secrets and confidential information (including customer lists and strategic data) for his personal benefit and for the benefit of his new employer, Performance Health. A forensic analysis of his pre-resignation activity shows that he also breached his fiduciary duty to SUNRx. Performance

Health, which is apparently owned and run by a former SUNRx officer, has knowingly induced

Bobo to violate his contract with SUNRx.  For these reasons, SUNRx brings suit seeking monetary

damages and injunctive and other relief against Bobo and Performance Health.

## PARTIES

1.      Plaintiff 340B Holdings, LLC is a limited liability company organized and existing

under the laws of the state of Delaware.  Its sole member is MedImpact Healthcare Systems, Inc.,

a California corporation with its principal place of business located at 10181 Scripps Gateway

Court, San Diego, California 92131.

2.      Defendant Matthew Bobo is a Texas resident domiciled at 2617 Raindance,

Leander, Texas 78641.

3.      Defendant Performance Healthcare Solutions, LLC is a limited liability company

existing under the laws of the state of Delaware, which may be served through its agent for service

of process, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

It is believed that the LLC's only member is Tim Liebmann.  Liebmann is a citizen of Tennessee.

## JURISDICTION AND VENUE

4.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

This Court has subject matter jurisdiction over this claim under 28 U.S.C. § 1331 because this

action arises under federal law under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836,

*et seq*.  This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because there is

complete diversity among the parties and the amount in controversy exceeds $75,000.  For

diversity purposes, Plaintiff is a citizen of California, Defendant Bobo is a citizen of Texas, and

Defendant Performance Health is a citizen of Tennessee.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (b) because

Defendant Bobo resides in this judicial district and a substantial part of the events or omissions giving rise to these claims occurred in this district.

## FACTUAL ALLEGATIONS

6.    SUNRx works with healthcare providers and pharmacies to administer discount drug programs pursuant to Section 340B of the Public Health Services Act, 42 U.S.C. § 256b; 42 C.F.R. § 10.  Section 340B requires pharmaceutical companies to make outpatient drugs available at greatly reduced prices to eligible healthcare organizations and covered entities.  Managing these 340B programs requires significant effort, resources, and attention to detail, so many covered entities outsource this management to companies like SUNRx.

7.    The 340B program administration market is highly competitive and highly specialized.  For more than a decade, SUNRx has devoted significant resources to developing strong, exclusive relationships with over 30 state hospital associations ("State Association Partners") across the country.  This unique business model has enabled SUNRx to provide preferred 340B administration services to State Association Partners' member hospitals and providers.  State Association Partners represent the overwhelming majority of SUNRx's core 340B business.[1]

8.    Bobo was hired by SUNRx on or about June 8, 2009.  At that time, Bobo had no experience with 340B program administration and minimal, if any, contacts in this industry sector. Accordingly, SUNRx provided Bobo with extensive training so that he was able to effectively consult with and market SUNRx's 340B program administrative services to current and prospective customers.  This training included information about the 340B framework and

---

[1] SUNRx is affiliated with State Hospital Associations for Alabama, Arkansas, California, Colorado, Florida, Georgia, Hawaii, Iowa, Idaho, Indiana, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Missouri, Mississippi, Montana, North Carolina, North Dakota, Nebraska, New Mexico, Ohio, Pennsylvania, South Carolina, South Dakota, Texas, Washington, West Virginia, and Wyoming.

program administration, as well as SUNRx's proprietary technology.  Additionally, Bobo was given access to SUNRx's valuable and confidential business information and/or trade secrets, including the identity of SUNRx's customers and the pricing terms of those relationships.

9.      From approximately 2013 until the time of his unexpected resignation in April 2019, Bobo served in a Sales Director role, working remotely from his Austin-area home.  Bobo's duties included reviewing proprietary market analyses, developing and implementing strategic sales plans, evaluating potential sales and areas of proposed expansion, and directing product research and development, as well as expanding relationships with State Association Partners across the country.  He was also responsible for working with other sales directors to manage client relationships and drive revenue, representing the company at trade association meetings, meeting with key clients, and preparing sales reports.  His primary geographic areas of focus were in SUNRx's South and Central regions, but during his time with the company he served clients in 22 states.

10.     Bobo's employment with SUNRx was contingent upon his acceptance of the terms of SUNRx's Employment Agreement because his job responsibilities required him to have access to SUNRx's highly confidential, proprietary, and trade secret information regarding SUNRx's business, including nationwide Salesforce data.  Bobo signed Sun Rx's Employee Confidentiality and Non-Interference Agreement (the "Employment Agreement") on November 14, 2012.[2]

11.     To protect SUNRx's highly confidential and proprietary information, the Employment Agreement contains restrictive covenants that prohibit certain actions by Bobo both during and after his employment.

    a.   During and for one year following his employment, Bobo is prohibited from

---

[2] Bobo was first hired by SUNRx in 2009 and then hired by 340B Holdings in 2012 as a part of SUNRx's acquisition by MedImpact.

performing services for any Pharmacy Benefit Management business within the United States.  *See* Employment Agreement at Section 5(c).

b.  During and for one year following his employment, Bobo is prohibited from soliciting any customer or prospective customer of SUNRx or disrupting or attempting to disrupt any contractual relationship of SUNRx.  *See* Employment Agreement at Section 5(a).

c.  Bobo is prohibited from using, appropriating, summarizing, publishing, copying, reproducing, permitting to be used, removing, or disclosing SUNRx's confidential information for non-SUNRx purposes and cannot use such information to cause (or attempt to cause) indirect or direct injury or loss to the company.  *See* Employment Agreement at Section 1; 1(a); 1(h).

12.    The Employment Agreement also explicitly sets out Bobo's common law duty of loyalty to the company—Bobo agreed that he owed a fiduciary duty of loyalty to act at all times in the best interests of SUNRx, and not to engage in any other employment, occupation, consulting, or other business activities related to SUNRx's business during his employment.  He also agreed not to engage in activities that conflicted with his obligations to SUNRx.  *See* Employment Agreement at Section 2.

13.    Bobo and SUNRx acknowledged that the Employment Agreement would be governed by and construed in accordance with Texas law.  *See* Employment Agreement at Section 6(e).

14.    It came as a surprise to SUNRx when, on April 12, 2019, Bobo suddenly tendered his resignation.  He did not inform SUNRx that he had immediate plans to continue working in the 340B industry.

15.     As a part of his departure process, Bobo signed an exit memo acknowledging his continuing obligations to SUNRx.  Bobo represented to SUNRx that he "did not believe any of [his] anticipated duties for [his] future employer(s) would create an inherent risk of [his] using or disclosing [Plaintiff's] confidential or proprietary information."  He agreed that if at any point in time he believed his duties would create such a risk, he would "let [his] employer know immediately so that they [could] arrange for someone other than [him] to perform such duties."

16.     Bobo is very familiar with the restrictive covenants in SUNRx's Employment Agreements and SUNRx's practice of strictly enforcing those covenants.  In his managerial role for SUNRx, Bobo signed Employment Agreements on behalf the company.  He has also been involved in prior non-compete cases brought by SUNRx against former employees.

17.     Bobo's LinkedIn profile continues to reflect (incorrectly) that he is employed by SUNRx.[3]  In fact, he is now working for a competitor—Performance Health—as its Vice President of Business Development.

18.     Performance Health's Chief Executive Officer is Tim Liebmann.  Liebmann previously served as SUNRx's Chief Executive Officer from 2007 to 2012.[4]  Performance Health's corporate formation documents were filed March 19, 2019, approximately three weeks before Bobo resigned from SUNRx.

19.     According to its marketing materials, Performance Health provides "340B Enhanced Referral Capture Services" which captures "compliant, auditable 340B referral prescriptions" and "enhances the bottom line for 340B covered entities."  It provides these services to 340B covered entities, hospital associations, 340B contract pharmacies, and 340B

---

[3] *See* https://www.linkedin.com/in/matthewbobo/ (last accessed on Feb. 18, 2020).
[4] Liebmann continued at SUNRx from 2012 to May 2016 as "Vice President, Pharmacy." *See* https://www.linkedin.com/in/tim-liebmann-4a794411/ (last accessed Feb. 18, 2020).

administrators and consulting firms—in fact, its marketing boasts of having "secured endorsements for 9 Hospital Associations," a segment of the product market in which its offerings are "rapidly expanding."

20.     Performance Health is a direct competitor of SUNRx, and Bobo's work for SUNRx is in direct competition with the work of SUNRx.

21.     Liebmann is quite familiar with the terms of Bobo's Employment Agreement, because these terms have been used by the company since Liebmann's SUNRx tenure. Liebmann's own employment with SUNRx was governed by a similar non-compete agreement. In spite of this knowledge, it appears that Liebmann induced Bobo to violate the terms of his Employment Agreement by joining up with Performance Health within the year following his separation from SUNRx or, alternatively, aided and abetted Bobo's intentional violations of the Employment Agreement.

22.     Indeed, SUNRx has recently learned that Bobo was laying the groundwork for his departure by misusing SUNRx's confidential information for several months before his departure from the company and during the period in which Performance Health was apparently being formed.

23.     Beginning in June 2018, and again in November 2018 and February 2019, Bobo forwarded SUNRx's confidential information to his personal email account.  These emails included regulatory analyses, financial spreadsheets, and the 340B Assessment Packets for numerous Texas hospitals.  These emails and attachments contain competitively sensitive business information, including SUNRx's administrative fee pricing, financial information, and curated customer information.  Bobo also forwarded spreadsheets to his personal email account that reflected proprietary financial information.

24.     What is more, not only has Bobo prematurely accepted employment with Performance Health after absconding with SUNRx's information, he has in fact worked from his Austin-area home in *direct* violation of his non-solicitation obligation.  Bobo, working on behalf of Performance Health, has contacted SUNRx customers with phone calls and by email with supporting marketing materials in an effort to disrupt those relationships and induce the customers bring their 340B program administration to Performance Health.  For example, in December 2019, Bobo contacted one of SUNRx's current customers and attempted to solicit that client's business for Performance Health.  He set up a call with that SUNRx client for December 10, 2019 and sent a Performance Health marketing Power Point in advance of their phone call.

25.     On information and belief, Bobo is continuing to exploit SUNRx's confidential information in developing Performance Health's competitive offerings and marketing its products to SUNRx customers, particularly to State Association Partners, all for the benefit of Performance Health and to the detriment of SUNRx.

## CAUSES OF ACTION

### Count One: DTSA (Against Bobo)

26.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

27.     As set forth above, SUNRx possesses certain trade secret information, including customer lists and contact information, hospital-specific analyses, internal market analyses, pricing data, and proprietary technology, all vital to its success in the 340B program administration business.  This information constitutes "trade secrets" under the DTSA, 18 U.S.C. §§ 1836 *et seq.*

28.     SUNRx has made reasonable efforts to maintain the secrecy of its trade secrets and to prevent the unauthorized disclosure or use of its trade secret information by requiring incoming employees like Bobo to sign the Employment Agreement, in which they agree to certain non-

interference provisions and to hold SUNRx's information in strict confidence and not to misuse the information.  The information is also securely stored on password-protected computers with limited accessibility and employees are only permitted to access the information remotely through a secure VPN access.

29.     SUNRx's trade secrets derive independent economic value from not being generally known to or readily ascertainable by other persons or entities.  SUNRx provided Bobo with this information for the limited purpose of his employment with SUNRx.

30.     This information is used in interstate commerce by SUNRx—a California entity with its principal place of business in California—which utilizes this trade secret information in its business relationships in numerous states, including Alabama, Arkansas, California, Colorado, Florida, Georgia, Hawaii, Iowa, Idaho, Indiana, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Missouri, Mississippi, Montana, North Carolina, North Dakota, Nebraska, New Mexico, Ohio, Pennsylvania, South Carolina, South Dakota, Texas, Washington, West Virginia, and Wyoming.

31.     SUNRx has a business model that is unique in the industry, and its trade secrets are vital to this business model.  Bobo has intentionally misappropriated SUNRx's trade secrets by making unauthorized use and disclosure of SUNRx's trade secrets to his personal email account and by other means to supply Performance Health with aspects of SUNRx's business model and allow it to improperly compete with SUNRx.

32.     Unless enjoined by the Court, Bobo's misappropriation of trade secrets will continue to cause great and irreparable harm to SUNRx, and SUNRx has no adequate or other remedy at law for such acts and threatened acts.  As such, SUNRx is entitled to preliminary and permanent injunctive relief.

33.     Further, as a direct, proximate, and foreseeable result of Bobo's misappropriation of SUNRx's trade secrets, SUNRx has been damaged in an amount not yet fully ascertained through loss of contracts, lost profit damages, and other losses.  Accordingly, SUNRx is entitled to lost profit and unjust enrichment damages under the DTSA.

### Count Two: Misappropriation of Trade Secrets under Tex.  Civ.  Prac.  & Rem.  Code § 134A (Against Bobo)

34.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

35.     As set forth above, SUNRx possesses and possessed certain trade secret information, including customer lists and contact information, hospital-specific analyses, internal market analyses, pricing data, and proprietary technology, all vital to its success in the 340B program administration business.  This information constitutes "trade secrets" under the Texas Uniform Trade Secrets Act ("TUTSA"), Tex.  Civ.  Prac.  & Rem.  Code § 134A.

36.     SUNRx has made reasonable efforts to maintain the secrecy of its trade secrets and to prevent the unauthorized disclosure or use of its trade secret information by requiring incoming employees like Bobo to sign the Employment Agreement, in which they agree to certain non-interference provisions and to hold SUNRx's information in strict confidence and not to misuse the information.  The information is also securely stored on password-protected computers with limited accessibility and employees are only permitted to access the information remotely through a secure VPN access.

37.     SUNRx's trade secrets derive independent economic value from not being generally known to or readily ascertainable by other persons or entities.  SUNRx provided Bobo with this information for the limited purpose of his employment with SUNRx.  SUNRx has a business model that is unique in the industry and its trade secrets are vital to this model.

38.     Bobo has intentionally misappropriated SUNRx's trade secrets by making

unauthorized use and disclosure of SUNRx's trade secrets to his personal email account and by other means to supply Performance Health with aspects of SUNRx's business model and allow it to improperly compete with SUNRx.

39.     Unless enjoined by the Court, Bobo's misappropriation of trade secrets will continue to cause great and irreparable harm to SUNRx, and SUNRx has no adequate or other remedy at law for such acts and threatened acts.  As such, SUNRx is entitled to preliminary and permanent injunctive relief.

40.     Further, as a direct, proximate, and foreseeable result of Bobo's misappropriation of SUNRx's trade secrets, SUNRx has been damaged in an amount not yet fully ascertained through loss of contracts, lost profit damages, and other losses.  Accordingly, SUNRx is entitled to lost profit and unjust enrichment damages under TUTSA.

### Count Three: Breach of Contract – Non-Compete (Against Bobo)

41.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

42.     The Employment Agreement provides that for one year following his employment, Bobo is prohibited from performing services for any Pharmacy Benefit Management company within the United States.

43.     SUNRx has performed each of its material obligations under the Employment Agreement.

44.     Bobo has breached this non-compete provision of the Employment Agreement by accepting employment and performing services for Performance Health, a Pharmacy Benefit Management Business prior to April 26, 2020.

45.     As a result, SUNRx has suffered damages, including loss of business, future loss of business, and loss of productivity from its employees.

## Count Four: Breach of Contract – Confidential Information (Against Bobo)

46.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

47.     The Employment Agreement prohibited Bobo from using SUNRx's confidential information except as required as a part of his SUNRx duties and for the benefit of SUNRx, both during and after his employment.

48.     SUNRx has performed each of its material obligations under the Employment Agreement.

49.     Bobo has breached the restrictions on use of SUNRx's confidential information.

50.     As a result of the misuse of its confidential information, SUNRx has suffered damages, including loss of business, future loss of business, the diminution in value of its competitively-sensitive information, disclosure of its competitively-sensitive information, and loss of productivity from its employees.

## Count Five: Breach of Contract – Non-Solicitation (Against Bobo)

51.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

52.     The Employment Agreement prohibits Bobo from soliciting any customer or prospective customer of SUNRx or disrupting or attempting to disrupt any contractual relationship of SUNRx for a period of one year following his termination (until April 26, 2020).

53.     SUNRx has performed each of its material obligations under the Employment Agreement.

54.     Bobo has breached the non-solicitation restrictions by approaching SUNRx customers and marketing Performance Health's competitive offerings to those customers.

55.     As a result of Bobo's breach of the non-solicitation provisions of his Employment Agreement, SUNRx has suffered damages, including loss of business, future loss of business, and

loss of productivity from its employees.

### Count Six: Breach of Fiduciary Duty (Against Bobo)

56.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

57.     Under Texas common law, an employee owes his employer a fiduciary duty.

58.     Bobo owed SUNRx a fiduciary duty of loyalty to act at all times in the best interests of SUNRx, and not to engage in any other employment, occupation, consulting or other business activities related to SUNRx's business during his employment.

59.     Bobo made plans during his tenure with SUNRx to form and accept employment with Performance Health, a competitor entity and facilitated these plans by misusing and misappropriating SUNRx's business information.  These plans were made for the benefit of Performance Health, and to the detriment of SUNRx.

### Count Seven: Tortious Interference with Employee Contracts (Against Performance Health)

60.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

61.     Bobo, like all similarly situated SUNRx's employees, was prohibited from competing with SUNRx or soliciting SUNRx's customers until one year after his exit from the company.

62.     Liebmann, SUNRx's former CEO and current CEO of Performance Health, was familiar with SUNRx's standard Employment Agreement and Bobo's Employment Agreement.

63.     Liebmann induced Bobo to leave SUNRx and accept employment with Performance Health.  Bobo did so, and continued on to commit other violations of his Employment Agreement on behalf of Performance Health.

64.     As a result, SUNRx has suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, SUNRx respectfully requests judgment in its favor and against Bobo and Performance Health, and for the following relief:

- Upon application, a preliminary injunction and a permanent injunction that:

  - enjoins Bobo's on-going violations of his Employment Agreement's non-compete, non-solicitation, and use of confidential information provisions; and

  - orders Bobo and Performance Health to return of all copies of SUNRx's confidential information or any documents that have been derived from SUNRx's confidential information;

- For compensatory damages, lost profits, unjust enrichment, disgorgement, restitution, exemplary damages, and any other damages to which Plaintiff is entitled in an amount to be shown at trial;

- For Plaintiff's attorneys' fees;

- For pre- and post-judgment interest and cost of suit incurred herein; and

- For such further relief as the Court finds just and proper.

Respectfully Submitted,

/s/ *Katherine P. Chiarello*
Katherine P. Chiarello
Texas State Bar No. 24006994
katherine@wittliffcutter.com
Karen S. Vladeck
Texas State Bar No. 24102899
karen@wittliffcutter.com
Kayna Stavast Levy
Texas State Bar No. 24079388
kayna@wittliffcutter.com

WITTLIFF | CUTTER, PLLC
1209 Nueces Street
Austin, Texas 78701

(512) 649.2434 office
(512) 960.4869 facsimile

***Attorneys for Plaintiff***
***340B Holdings, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of February, 2020, a true and correct copy of the foregoing document was tendered for filing to the Clerk of the U.S. District Court for the Western District of Texas using the Court's CM/ECF system.

/s/ Katherine P. Chiarello
Katherine P. Chiarello